**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FRANK FUZY, III, *et al.* <br><br>             Plaintiffs, <br><br>    v. <br><br> WESTFIELD BOARD OF EDUCATION, *et al.* <br><br>             Defendants. | Civil Action No.: 19-18434 <br><br><br> **OPINION** |

**CECCHI, District Judge.**

This matter comes before the Court by way of three motions: (1) a consolidated motion to dismiss and motion for summary judgment filed by Defendants Lilian Gail Alston, Mike Seiler, Lisa Quackenbush, and Lori Swanson, who were members of the Westfield Education Association ("WEA") (collectively, the "WEA Defendants") (ECF No. 79); (2) a motion for summary judgment filed by Defendants Westfield Board of Education ("Board"), Margaret Dolan, David Duelks, Peggy Oster, Amy Root, Michael Bielen, Lynn Benner, Kent Diamond, Brendan Galligan, Gretchen Ohlig, Tara Oporto, Charles Ostroff, Eileen DeFabio, and Jennifer Ulrich (collectively, the "Board Defendants") (ECF Nos. 80 & 101); and (3) a consolidated motion to dismiss and motion for summary judgment filed by Defendants New Jersey Education Association ("NJEA"), Marie E. Blistan, Maryanne Rodriguez, and Aileen O'Driscoll (collectively, the "NJEA Defendants") (ECF No. 81). Plaintiffs Frank Fuzy, III ("Mr. Fuzy") and Marie Elaina Fuzy ("Mrs. Fuzy") (collectively, the "Plaintiffs") opposed the motions. ECF Nos. 83, 89, 90, 92. The WEA Defendants, the Board Defendants, and the NJEA Defendants (collectively, "Defendants") filed replies. ECF Nos. 84, 103, 104. For the reasons stated below, the motions are granted.

I.   **BACKGROUND**

    **A.  Procedural Posture**

Although the WEA and NJEA Defendants moved to dismiss certain claims and for summary judgment on certain claims, and the Board Defendants moved for summary judgment on all of Plaintiffs' claims, the Court will treat all three of Defendants' motions as ones to dismiss. Defendants' briefing suggests that they moved for summary judgment primarily so that the Court could consider an arbitration transcript, arbitration award, and state court decision confirming the award. Defendants need not, however, seek summary judgment for the Court to consider these materials. Indeed, it is well-established that a "Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting [a] motion to dismiss into one for summary judgment." *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337, 340 (D.N.J. 2006).

Here, the arbitration award and transcript are integral to the Complaint, and the state court decision is a public record. As discussed in detail below, Plaintiffs assert various claims challenging the procedure and merits of an underlying tenure arbitration, and Defendants contend that the arbitration record precludes Plaintiffs from relitigating these issues. Because these documents are directly relevant to the facial viability of Plaintiffs' claims, the Court will consider them and analyze the sufficiency of the Complaint under Federal Rule of Civil Procedure 12(b)(6). *See Rodriguez v. Hayman*, No. 08-4239, 2009 WL 4122251, at *3 (D.N.J. Nov. 23, 2009) (treating motion for summary judgment as motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) because consideration of extrinsic documents integral to complaint "does not transform consideration of the pending Motion into one for summary judgment").

    **B.  Factual Background**

This action arises out of the Board's decision to bring tenure charges against Mr. Fuzy, a third-grade public school teacher, for, *inter alia*, making threatening statements referencing his physical stature and status as a gun owner.  On January 24, 2019, the matter was referred to an arbitrator (the "Arbitrator") for a hearing and decision.  Opinion and Award, ECF No. 79.13 (the "Award").  On September 26, 2019—after the hearing, but before the Arbitrator issued her decision—Plaintiffs instituted this action.  *See* Compl., ECF No. 1.  By Opinion and Award dated December 16, 2019, the Arbitrator sustained certain of the tenure charges and concluded the Board "had just cause to dismiss Frank Fuzy from employment."  Award at 35.  By Order dated August 17, 2020, the Superior Court of New Jersey confirmed the Arbitrator's Award.  ECF No. 79.12.

### 1.  The Parties

Until his dismissal effective December 16, 2019, Plaintiff Frank Fuzy, III was a tenured third-grade teacher at the Tamaques School in Westfield, New Jersey.  *See* Award at 6, 35.  Mr. Fuzy was suspended from his teaching position effective January 24, 2018, after Defendant Alston, the president of his local teachers' union, reported that Mr. Fuzy had repeatedly referenced "his height, weight and ownership of several guns" during a phone conversation with her.  *Id.* at 2, 11, 27–28.  Plaintiff Marie Elaina Fuzy is Mr. Fuzy's wife.  *Id.* at 2.

Defendant Dolan is the superintendent of the Westfield Public Schools.  *Id.*  Defendant Duelks is the principal of the Tamaques School.  *Id.*  Defendants DeFabio and Ulrich are employees of the Westfield Public Schools.  *See id.*  Defendants Oster, Root, Bielen, Benner, Diamond, Galligan, Ohlig, Oporto, and Ostroff are members of the Westfield Board of Education.  Compl. ¶ 3.

WEA Defendants Alston, Seiler, Quackenbush, and Swanson are members of, or at one time were affiliated with, the Westfield Education Association.  NJEA Defendants Blistan,

Rodriguez, and O'Driscoll are members of, or are otherwise affiliated with, the New Jersey Education Association. *See id.* at 1.

### 2.  The Arbitration

On December 27, 2018, the Board certified six tenure charges against Mr. Fuzy pursuant to the Tenure Employees Hearing Law, N.J.S.A. 18A:6-10 *et seq.* ("TEHL").  *See* Award at 1, 3. On January 24, 2019, the Commissioner referred the charges to the Arbitrator for a hearing and decision.  *See id.* at 1.  The hearing was held over eight days between July 2019 and September 2019.  *Id.* at 2.  The hearing took place on July 8, 2019, July 9, 2019, July 15, 2019, July 31, 2019, August 5, 2019, August 13, 2019, August 15, 2019, and September 13, 2019.  *Id.*  During the course of the hearing, "the parties argued orally, examined and cross-examined witnesses, and introduced documentary evidence into the record."  *Id.*  The charges alleged that Mr. Fuzy "engaged in conduct unbecoming a public employee and other just cause."  *Id.* at 3.  In a 35-page opinion issued on December 16, 2019, the Arbitrator found the Board had just cause to dismiss Mr. Fuzy from his employment.  *Id.* at 35.

In Charge Number One, the Board claimed, *inter alia*, that Mr. Fuzy "frequently commented to other staff members that he owns multiple guns, including an AR-15," "frequently posts about guns on social media outlets," "informed staff members that he keeps a gun in the glove compartment of his car," "stated that he would run out to his car if he needed to use a gun," and remarked to a staff member in 2016, "don't be surprised if one day I come back here and take care of some people."  *Id.* at 3.  Charge Number One further alleged that in January 2018, Mr. Fuzy "made specific threatening comments" to Alston, the president of Mr. Fuzy's union, regarding Duelks, the school principal.  *Id.*  Specifically, the Board claimed that after Duelks requested Mr. Fuzy observe another school teacher, Mr. Fuzy had "expressed anger" and "refused

to cooperate with the observation." *Id.* When Mr. Fuzy discussed Duelks's request with Alston, Mr. Fuzy, "[i]n his anger towards the school principal and the school," stated approximately seven times that he is "six feet tall, weigh[s] 230 pounds and has 26 guns." *Id.* at 3–4.

The Arbitrator sustained Charge Number One "to the extent that Mr. Fuzy made repeated threatening statements about his height, weight and gun ownership in association with his concerns that he was being harassed by Principal Duelks." *Id.* at 33. The Arbitrator noted it was undisputed "Mr. Fuzy has commented to staff members that he owns multiple guns," and "Mr. Fuzy testified that he mentioned his height, weight and gun ownership multiple times" during his conversation with Alston. *Id.* at 24, 27. The Arbitrator further found "Mr. Fuzy's comments and actions regarding guns have served to create an atmosphere at the school where several other staff members are intimidated and fearful of imminent harm." *Id.* at 29.

Charge Number Two asserted that in 2017, after noticing a deer in an enclosed section of school property, "Mr. Fuzy turned to another staff member and stated that he wished the deer would escape and injure students, so that his principal would 'look bad.'" *Id.* at 4. He allegedly later opened the gate to let the deer into the schoolyard. *See id.* at 4, 30. The Arbitrator found that while "[t]he record does not reflect that Mr. Fuzy took any action to let deer in the same area with children," the charge was nevertheless "substantiated to the extent that it further establishes Mr. Fuzy's animosity towards Mr. Duelks." *Id.* at 30. The Arbitrator reasoned that Defendant DeFabio—the person to whom Mr. Fuzy allegedly made the remark about the deer—"was a credible witness and it is possible that Mr. Fuzy has forgotten that he made a comment . . . ." *Id.* According to the Arbitrator, Mr. Fuzy's "comment . . . on its own, might warrant discipline short of dismissal." *Id.*

In Charge Number Three, the Board alleged that between September 2017 and January 2018, Mr. Fuzy picked up a student by her feet. *Id.* at 4. Other students allegedly witnessed the incident. *Id.* The Arbitrator dismissed Charge Number Three in its entirety, concluding "the record does not include testimonial or other direct evidence establishing" that Mr. Fuzy picked up a student by her feet. *Id.* at 31.

The Arbitrator analyzed Charge Number Four and Charge Number Five together. Charge Number Four alleged that between September 2017 and January 2018, Mr. Fuzy "embarrassed and disparaged" a student in front of the class when the student tried to ask Mr. Fuzy a question. *Id.* According to the charge, when the student attempted to ask a question, Mr. Fuzy turned to the class and said, "'if she has to ask questions it must mean that she was not paying attention.'" *Id.* In Charge Number Five, the Board claimed that Mr. Fuzy "has yelled at his students" and stated "'what are you stupid?'" *Id.* The charge further asserted that Mr. Fuzy's conduct has caused students to cry and was witnessed by other students and staff members. *Id.*

The Arbitrator concluded that while the record did not substantiate "the specific allegation in Charge Number Four . . . the allegations in Charge Number Five are proven." *Id.* at 32. The Arbitrator credited the testimony of two witnesses—Defendant Ulrich, a disabilities teacher, and Kathryn Ciullo, a paraprofessional—that "establishe[d] that Mr. Fuzy did not always exercise the restraint necessary for a teacher." *Id.* She noted, however, that "[w]hile Mr. Fuzy's conduct in calling a student 'stupid' is serious and warrants discipline, it is not, by itself, sufficient to warrant tenure charges." *Id.* Rather, "Charge Number Five lends support to the allegations that Mr. Fuzy does not engage in the self-restraint necessary for a teacher of elementary school students." *Id.*

Finally, Charge Number Six concerned Mr. Fuzy's conduct after he was suspended on January 24, 2018. Specifically, Charge Number Six asserts that Mr. Fuzy, *inter alia*, "repeatedly

and consistently contacted staff" after his suspension, despite the superintendent's directive that he should "'refrain from any contact with staff, students, or the families of students.'"  *Id.* at 5. The charge further alleges that Mr. Fuzy left voicemails for staff members "asking them to contact him with what they have heard" and asked parents "to write letters of support and endorsement for him."  *Id.*  In addition, the charge alleged that the superintendent allowed Mr. Fuzy to attend a "daddy/daughter event" during the suspension period, but he "abused the privilege" by purposely choosing to attend the event at the Tamaques School.  *Id.*  During the event, Mr. Fuzy allegedly told parents that he would be returning in mid-May, which "caused great anxiety and fear in parents, students, and the staff who learned about his statement."  *Id.*  Teachers and parents allegedly informed the superintendent that "they were afraid for their safety and the safety of their children if Mr. Fuzy returned."  *Id.* at 5–6.  The Arbitrator found that there was insufficient evidence to support the allegations concerning Mr. Fuzy's alleged post-suspension conduct and dismissed the charge in its entirety.  *Id.*

### C.  Procedural History

On September 26, 2019, Plaintiffs filed the Complaint in this Court asserting the following causes of action: (1) violation of Mr. Fuzy's right to continued employment in retaliation for exercising his Second Amendment right to bear arms ("Count I"); (2) violation of Mr. Fuzy's right to continued employment in retaliation for exercising his First Amendment right to free speech ("Count II"); (3) violation of Mr. Fuzy's right to continued employment in furtherance of a conspiracy "to harass . . . and punish him" for exercising his constitutional rights to free speech and to bear arms ("Count III"); (4) hostile work environment ("Count IV"); (5) sex discrimination ("Count V"); (6) age discrimination ("Count VI"); (7) disability discrimination ("Count VII"); (8) violation of Mr. Fuzy's Fourth Amendment rights to be free from unlawful search and seizure and

to privacy ("Count VIII"); (9) violation of Mr. Fuzy's procedural due process rights under the Fifth and Fourteenth Amendments ("Count IX"); (10) violation of Mr. Fuzy's substantive due process rights ("Count X"); (11) breach of contract ("Count XI"); (12) defamation, libel, and slander ("Count XII"); (13) the tort of false light ("Count XIII"); (14) tortious interference with business reputation ("Count XIV"); (15) intentional interference with prospective economic advantage ("Count XV"); (16) breach of the duty of fair representation ("Count XVI"); (17) intentional infliction of emotional distress ("Count XVII"); (18) legal malpractice ("Count XVIII");[1] (19) fraudulent concealment of evidence ("Count XIX");[2] and (20) *per quod* ("Count XX").  Compl. ¶¶ 218–348.  On October 7, 2021, the WEA Defendants filed a consolidated motion to dismiss and motion for summary judgment.  ECF No. 79.  On October 19, 2021, the Board Defendants filed a motion for summary judgment, *see* ECF No. 80, and the NJEA Defendants filed a consolidated motion to dismiss and motion for summary judgment, *see* ECF No. 81.  Plaintiffs opposed each motion, ECF Nos. 83, 89, 90, 92, and Defendants filed replies, ECF Nos. 84, 103, 104.

## II.  LEGAL STANDARD

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). A claim is facially plausible when supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that contains "a formulaic recitation of the elements of a cause of action" supported by mere conclusory statements or offers " 'naked

---

[1] Count XVIII is incorrectly numbered as "Count XIII" in the Complaint.  Plaintiffs only asserted this claim against Defendant Caruso, Smith, Picini, PC, which has since been dismissed from the action.  *See* ECF No. 111.

[2] Count XIX is incorrectly numbered as "Count IX" in the Complaint.

assertion[s]' devoid of 'further factual enhancement' " will not suffice. *Id.* (alteration in original) (citation omitted). In evaluating the sufficiency of a complaint, the court accepts all factual allegations as true, draws all reasonable inferences in favor of the non-moving party, and disregards legal conclusions. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–34 (3d Cir. 2008).

## III.   ANALYSIS

### A.  Collateral Estoppel

The primary issue before the Court is whether Plaintiffs are collaterally estopped by the Arbitrator's Award from challenging the basis for Mr. Fuzy's dismissal.  The WEA and NJEA Defendants argue that the Arbitrator's decision bars relitigation of the issues underlying Counts I, II, IV-VII, IX, XII-XVII, and XX.  *See* ECF Nos. 79.13 at 12 & 81.1 at 3.  The Board Defendants contend Plaintiffs are collaterally estopped from asserting all of the claims in the Complaint.  ECF No. 101 at 10.  Plaintiffs counter that Defendants' motions must be denied because TEHL arbitration decisions do not have preclusive effect generally, and, in any event, the issues raised in this litigation differ from those decided by the Arbitrator.  *See* ECF No. 83 at 7–8; ECF No. 90 at 7–8; ECF No. 92 at 7–8, 15.

### 1.  Preclusive Effect of TEHL Decisions Generally

The doctrine of collateral estoppel "bars re-litigation of an issue identical to that in a prior action."  *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993).  The doctrine has been extended "to state-level agency or administrative adjudications, to the extent that state law gives such adjudications preclusive effect, as long as the agency acted in a judicial capacity and the parties had an adequate opportunity to litigate the issue."  *Tobia v. Lakewood Bd. of Educ.*, No. 16-04850, 2020 WL 7334209, at *11 (D.N.J. Dec. 14, 2020).  In New Jersey, "courts give

agency or administrative adjudications full preclusive effect, *i.e.*, they 'may form the basis for application of the doctrine of collateral estoppel,' as long as the proceedings provide ' "significant procedural safeguards" similar to those that are provided to litigants in courts of law.'" *Id.* at *11 (quoting *Winters v. North Hudson Regional Fire and Rescue*, 212 N.J. 67, 87 (2012)). Furthermore, "an arbitration award, like an adjudicative determination of an administrative tribunal," can "be issue-preclusive." *Nogue by Nogue v. Est. of Santiago*, 224 N.J. Super. 383, 386, 540 A.2d 889, 891 (App. Div. 1988). "Critically, '[f]indings made as part of the discipline process will have preclusive impact in later employment-discrimination litigation raising allegations of employer retaliation based on the same transactional set of facts.'" *Tobia*, 2020 WL 7334209, at *12 (quoting *Winters*, 212 N.J. at 74).

Here, the Arbitrator's TEHL decision carries preclusive effect.  Contrary to Plaintiffs' assertions, the TEHL arbitration process affords employees meaningful procedural safeguards akin to those available in a judicial forum.  Indeed, the TEHL provisions set forth requirements for bringing and certifying tenure charges, conducting hearings, rendering an arbitration decision, and seeking appellate review, *see* N.J.S.A. 18a:6–10 to 18a:6–17.2, and courts in this District have found these "comprehensive trial-like" procedures to "fully comport with due process." *Tobia*, 2020 WL 7334209, at *12.  Moreover, the Arbitrator clearly acted in a judicial capacity and provided the parties adequate opportunity to litigate the issues before her.  During and after the eight-day hearing, at which Mr. Fuzy was represented by counsel, the parties made oral presentations, examined over a dozen witnesses, offered documentary evidence, and submitted post-hearing briefs. *See* Award at 2.  On this record, the Court finds that the Arbitrator's decision is entitled to preclusive effect.

## 2.  Preclusive Effect on Complaint

Having concluded the Award carries preclusive effect, the Court must next determine which of Plaintiffs' claims in this case, if any, are barred by the Arbitrator's findings. Here, as noted above, the Board raises collateral estoppel as a defense to all of Plaintiff's claims, while the WEA and NJEA only raise collateral estoppel as to some of Plaintiffs claims. Nonetheless, the Court may *sua sponte* consider the Award's preclusive effect on all of the claims asserted in the Complaint. *See Oneal v. Lester A. Drenk Behav. Health Ctr.*, No. 04-5616, 2006 WL 5116706, at *2 n.3 (D.N.J. Dec. 17, 2006) ("The Court may address the doctrine of collateral estoppel *sua sponte*.") The Court begins its analysis with Plaintiffs' federal claims.

### a. Counts I-III: Violations of Property Interest in Continued Employment

Counts I, II, and III of the Complaint assert federal retaliation claims. Specifically, the Complaint alleges Defendants violated Mr. Fuzy's constitutionally-protected right to continued public employment by suspending and bringing tenure charges against him: (1) in retaliation for exercising his Second Amendment right to bear arms (Count I); (2) in retaliation for exercising his First Amendment right to free speech (Count II); and (3) in furtherance of a conspiracy to "harass . . . and punish him" for exercising his First Amendment right to free speech and Second Amendment right to bear arms. Compl. ¶¶ 218–31 at 35–37. Plaintiffs bring Counts I and II under 42 U.S.C. § 1983 and the NJCRA, *id.* at 36 ¶ 230; 37 ¶ 228, and Count III under 42 U.S.C. § 1985(3), *id.* at 38 ¶ 231. In effect, these claims ascribe retaliatory motives to the Board's decision to file tenure charges against Mr. Fuzy. Defendants argue Plaintiffs are collaterally estopped from relitigating these retaliation theories because the Arbitrator already decided the issue. *See, e.g.*, ECF Nos. 84 at 6; 104 at 7. In response, Plaintiffs contend collateral estoppel does not apply here because Mr. Fuzy "did not raise any of the theories in this lawsuit before Arbitrator Klein." ECF No. 89 at 14.

In New Jersey, the doctrine of collateral estoppel bars relitigation of an issue where: "(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *Matter of Est. of Dawson*, 136 N.J. 1, 20 (1994) (internal citations omitted). Defendants, as the parties asserting the doctrine, bear the burden of showing that all five elements have been satisfied. *Id.* at 20.

The elements of collateral estoppel are met here. As to the first prong, to determine if there is an identity of issues, courts consider "whether there is substantial overlap of evidence or argument in the second proceeding; whether the evidence involves application of the same rule of law; whether discovery in the first proceeding could have encompassed discovery in the second; and whether the claims asserted in the two actions are closely related." *First Union Nat. Bank v. Penn Salem Marina, Inc.*, 190 N.J. 342, 353 (2007). A review of the arbitration record indicates that reprisal was a "central theme" of Mr. Fuzy's defense to the tenure charges. *Winters*, 212 N.J. at 88. Indeed, in his opening statement, Mr. Fuzy's counsel began by arguing:

> As to the issue of no one wants him in the school, it is clear when you look at some of the exhibits and I think when you hear the testimony of witnesses that what you'll see is *this is a vendetta by administration and the union to get rid of a person whose personality they simply don't like*. As we all are well aware in a school system, if you're on the outside looking in it's a lonely place to be and that's exactly where Mr. Fuzy was. *The retaliation is rampant for going against management. It's happened before. It's happened here* especially when you have a union that doesn't protect its members.

Transcript of Tenure Proceedings ("Tenure Tr.") at 11:4-17, ECF No. 79.3 (emphasis added).

Mr. Fuzy's counsel further posited:

> We believe this is all being driven by management, by one person in particular, David Duelks, who certainly had a great deal of animus towards Mr. Fuzy . . . With regard to Mr. Fuzy owning guns, . . . It's a hobby that Mr. Fuzy has participated in which he certainly has sometimes mentioned to co-workers as they have mentioned the hobbies they engage in. What the Board of Education is attempting to do here is connect Mr. Fuzy's hobby with issues surrounding school safety, national issues, and that demonstrates the persecutory nature of these charges.

Tenure Tr. at 13:6-17, ECF No. 79.3.

Similarly, on cross-examination, Mr. Fuzy testified that Defendant Alston may have fabricated the conversation that resulted in his termination because of, *inter alia*, his status as a gun owner:

> Q: So do you think that she would have any reason to make up a story about you with respect to your statements about owning guns or -- or repeating that you owned guns and your height and your weight so that she would report you to [Superintendent] Dr. Dolan?
>
> A: Well, if you're going to remember how I described how I'm labeled, that people who barely know me automatically make judgments based on my size, my stature, the way I carry myself, it's something that's done all the time so Gail could have easily misinterpreted it, misunderstood -- you know, not fully understood what I was talking about. She could have had an image in her head. She could be somebody who is anti-firearms and she could have drawn her own conclusions within a second.
>
> Q: But you don't know any of this. You're just assuming all of this now, aren't you?
>
> A: Yes.

Tenure Tr. at 940:18-941:10, ECF No. 79.8.

In addition, the Arbitrator expressly acknowledged Mr. Fuzy's retaliation defense in her opinion, noting Mr. Fuzy "suggests that [Alston's] report of the conversation is retaliatory." Award at 27.  The Arbitrator ultimately rejected Mr. Fuzy's contentions and found that he did in

13

fact "engage[] in unbecoming conduct that supports his dismissal from his position as a tenured teacher for the Westfield School District." *Id.* at 34.

As the record makes clear, Mr. Fuzy argued at arbitration that the tenure charges were the product of retaliation, rather than his own conduct. That argument substantially overlaps with the claims he asserts in Counts I, II, and III of the Complaint in this action. Like Mr. Fuzy's arbitration defense, his federal court Complaint alleges that the tenure charges were baseless and brought for retaliatory purposes. The Court therefore finds there is an identity of issues between the prior arbitration proceeding and the instant matter.

With respect to the second prong, the Court concludes that the retaliation issue was actually litigated in the TEHL proceeding. New Jersey courts consider an issue to have been "actually litigated" for purposes of collateral estoppel if the "issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Tobia*, 2020 WL 7334209, at *15 (internal citation and quotation marks omitted). Here, the issue of retaliation was submitted for determination and actually determined by the Arbitrator. As noted above, the Arbitrator considered Mr. Fuzy's contention that Alston reported his statements concerning his height, weight, and status as a gun owner for retaliatory reasons. The Arbitrator ultimately concluded, however, that Mr. Fuzy did in fact make the statements and that such statements constituted a "generalized threat." Award at 26, 29.

In making this determination, the Arbitrator cited Defendant Dolan's testimony regarding her decision to file tenure charges in the first place. According to Dolan, she brought the charges only after Alston informed her about Alston's conversation with Mr. Fuzy, during which Mr. Fuzy admittedly referenced his height, weight, and gun ownership. *Id.* at 12. Dolan's conversation with Alston prompted the Westfield School District to investigate Mr. Fuzy's behavior, during which

14

"[i]t became very, very apparent in the conversations with staff members both paraprofessionals and teachers that there were a number of teachers who felt unsafe in Tamaques School specifically because of Mr. Fuzy." *Id.* at 11–12. While Dolan "acknowledged that Mr. Fuzy had previously posted statements and pictures about guns on social media," she understood "his right to make such postings" and "distinguished between such postings and his comments to Ms. Alston." *Id.* at 12. Contrary to Mr. Fuzy's assertion that Alston's decision to report the conversation was "retaliatory," the Arbitrator found the "crux" of the conversation had "been substantiated" and concluded that Alston, Dolan, and other colleagues "all considered Mr. Fuzy's repeated statements . . . to be a threat" and "raised cause for concern." *Id.* at 28. The Arbitrator's findings of fact foreclose Plaintiffs' retaliation claims here.

The third collateral estoppel element—whether there has been a final judgment on the merits—is also satisfied. "[F]inality for purposes of issue preclusion is a more pliant concept than it would be in other contexts." *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991) (internal citation and quotation marks omitted). "Unlike claim preclusion, the effectiveness of issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable." *Id.* at 569. Rather, "collateral estoppel applies whenever an action is sufficiently firm to be accorded conclusive effect." *Id.* (internal citation and quotation marks omitted). Here, the Arbitrator's judicially-confirmed decision is a final judgment on the merits for purposes of collateral estoppel because the Arbitrator sustained certain charges and upheld Mr. Fuzy's dismissal. *See Tobia*, 2020 WL 7334209, at *14 ("It is also clear that the arbitration decision was a final judgment on the merits, since the arbitrator sustained the tenure charges based on a preponderance of the evidence, and in turn, affirmed Plaintiff's termination.").

As to the fourth element, the Court finds the Arbitrator's consideration of the retaliation issue essential to the arbitration decision. "[A]n issue is not essential if ... the judgment is not dependent upon the determination[ ], because [s]uch determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made." *Id.* at *17 (quoting Restatement (Second) of Judgments § 27) (internal quotation marks omitted). In the context of tenure hearings, "[a]s a matter of law, . . . an arbitrator must consider affirmative or exculpatory defenses because they shift the burden of production to the school board to offer substantial, credible evidence of conduct unbecoming, inefficiency, or other just cause." *Id.* (internal citations and quotation marks omitted). "If an employee proffers and establishes a defense against the school board's prima facie case, and the board fails to rebut that defense with further proof, then the board has not met its burden of justifying its tenure charges with a preponderance of the evidence, and the charges cannot legally be sustained." *Id.* (internal citation and quotation marks omitted). Here, the Arbitrator found Mr. Fuzy failed to establish his retaliation defense. Indeed, in sustaining Charge Number One, the Arbitrator expressly noted that while Mr. Fuzy suggested Alston's "report of the conversation [to Dolan] is retaliatory," the "crux" of Alston's report—that Mr. Fuzy made repeated statements concerning his height, weight, and gun ownership—was corroborated by Mr. Fuzy himself. Award at 27. In effect, the Arbitrator rejected Mr. Fuzy's theory of retaliation. Mr. Fuzy's failure to proffer sufficient evidence of retaliation was necessarily essential to the Arbitrator's decision.

Finally, the Court concludes that the fifth element of collateral estoppel concerning identity of parties is met here. "[U]nder the modern doctrine of non-mutual issue preclusion, '[c]omplete identity of parties in the two suits is not required for the application of issue preclusion'" so long as "'the party to be precluded . . . had a "full and fair" opportunity to litigate the issue in the first

action.'"  *Pasqua v. Cnty. of Hunterdon*, No. 15-3501, 2017 WL 5667999, at *15 (D.N.J. Nov. 27, 2017) (quoting *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1232 (3d Cir. 1995); *Peloro v. United States*, 488 F.3d 163, 175 (3d Cir. 2007)).   Here, Defendants assert collateral estoppel against Mr. Fuzy, who was a party to all prior proceedings.[3]  Mr. Fuzy had a full and fair opportunity to litigate the retaliation issue during the arbitration through oral argument, examination of witnesses, and proffers of documentary evidence.

As Defendants have established all five collateral estoppel elements, the Court concludes Plaintiffs are precluded from relitigating the issue of retaliation in the instant matter.   This conclusion necessarily bars the § 1983 claims asserted in Counts I and II.  "To advance a § 1983 claim, a plaintiff must show as part of her initial burden of proof that it is more likely than not that a defendant based its conduct, such as the adverse employment decision here, on unlawful considerations."  *Tobia*, 2020 WL 7334209, at *17 (citing *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Here, the Arbitrator rejected Mr. Fuzy's retaliation contentions and found that the Westfield School District had "good cause" for dismissing him.  Award at 27, 34.  The Arbitrator's "good cause" finding precludes Mr. Fuzy from stating a *prima facie* case under § 1983 because he cannot establish the "unlawful considerations" element.

The Arbitrator's decision similarly bars the Count III claim for conspiracy to retaliate under 42 U.S.C. § 1985(3).  In Count III, Plaintiffs claim Defendants conspired to retaliate against Mr. Fuzy for exercising his constitutional rights to free speech and to bear arms.  To state "a conspiracy claim under 42 USC § 1985(3), Plaintiff must 'prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal

---

[3] Mrs. Fuzy's only claim—Count XX for *per quod*—is a "derivative cause of action whose viability depends" on the viability of Mr. Fuzy's underlying claims.  *Lockhart v. Willingboro High Sch.*, No. 14-3701, 2017 WL 4364180, at *8 (D.N.J. Sept. 29, 2017).

protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Szemple v. Rutgers*, No. 10-05445, 2016 WL 1228842, at *7 (D.N.J. Mar. 29, 2016) (quoting *United Brotherhood of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983)).  Here, the Arbitrator's finding that the tenure charges were brought as a result of Mr. Fuzy's own conduct, including his statements to Alston regarding his height, weight, and gun ownership, preclude Plaintiffs from asserting that the charges were a product of a conspiracy.

Plaintiffs' arguments in opposition do not alter the Court's conclusion.  According to Plaintiffs, collateral estoppel cannot apply here because the retaliation theories asserted in this lawsuit were not raised at arbitration.  *See* ECF No. 83 at 14, 16; ECF No. 90 at 23–24; ECF No. 92 at 15.  This argument is unpersuasive for two reasons.  First, by Plaintiffs' own concession, Mr. Fuzy did in fact "testif[y] that Defendants treated him unfairly and unjustly and that they acted based on false and trumped up facts."  *See* ECF No. 92 at 15.  As detailed above, the Arbitrator considered, and ultimately rejected, Mr. Fuzy's retaliation contentions and found that the Westfield School District had "good cause" to dismiss Mr. Fuzy.  Award at 27, 34.

Second, the Supreme Court of New Jersey's decision in *Winters* forecloses any argument that for collateral estoppel to apply, Plaintiffs' retaliation theories in this case must be identical to those raised at arbitration.  The *Winters* court "held that if a public employee raises a retaliation claim during an administrative hearing held to determine whether that employee's discharge or discipline was proper, then that employee is precluded from bringing a separate retaliation claim in later litigation."  *May v. Borough of Pine Hill*, No. 10-2628, 2013 WL 663702, at *2 (D.N.J. Feb. 22, 2013) (citing *Winters*, 50 A.3d at 652)).  "[T]he upshot of *Winters* is that there are

'consequences' to Plaintiff's decision 'not to present proofs to demonstrate' all dimensions of [his] retaliation defense." *Tobia*, 2020 WL 7334209, at *15 (quoting *Winters*, 212 N.J. at 90).  In other words, "*Winters* precludes Plaintiff not only from raising the same retaliation defense, but from offering 'a more expansive presentation' of that defense, *i.e.*, a new theory as to why Defendants retaliated against [him]." *Id.* (quoting *Winters*, 212 N.J. at 73).  Here, as in *Winters*, because Mr. Fuzy raised the issue of retaliation before the arbitrator, he must "accept the consequences of his strategy" not to "present[] his defense more fully than he did." *Winters*, 212 N.J. at 73.  He cannot now allege a different theory of retaliation that could have been raised below, particularly where retaliation was a "central theme of his argument." *Id.* at 88.

Furthermore, to the extent Plaintiffs argue that the Award cannot have preclusive effect on the § 1983 claims, *see, e.g.*, ECF No. 90 at 24–30, that argument is similarly unpersuasive.  In support of this contention, Plaintiffs primarily rely on the Supreme Court's decision in *McDonald v. City of West Branch, Michigan*.  466 U.S. 284 (1984).  In *McDonald*, the Supreme Court held that "in a § 1983 action, a federal court should not afford res judicata or collateral-estoppel effect to an award in an arbitration proceeding brought pursuant to the terms of a collective-bargaining agreement." *Id.* at 292.  Unlike in *McDonald*, the TEHL proceeding at issue here was brought pursuant to statute, not a collective bargaining agreement.  Consequently, *McDonald* does not apply.

For the reasons stated above, Counts I, II, and III are barred by the doctrine of collateral estoppel.

### b.  Count X: Violation of Substantive Due Process

Count X similarly must be dismissed on collateral estoppel grounds.  At the outset, the Court notes it is difficult to discern the basis for this claim from the face of the Complaint or

Plaintiffs' briefing.  However, construing the allegations in the Complaint in the light most favorable to Plaintiffs, Count X appears to allege that the Board Defendants[4] violated Mr. Fuzy's substantive due process rights by bringing tenure charges against him in retaliation for exercising certain constitutional rights, including his rights to free speech and to bear arms.  *See* Compl. ¶ 273 ("Plaintiff's protected property interest in his continued employment as well as his rights to free speech and to bear arms were the motivating factor in the action complained of.")  As detailed above, the Arbitrator previously rejected Mr. Fuzy's argument that the Westfield School District's decision to file tenure charges was motivated by a retaliatory purpose.  As the retaliation issue appears to be central to the substantive due process claim asserted in Count X, Plaintiffs are collaterally estopped from relitigating that issue.  Therefore, Count X must be dismissed.

## B.  Remaining Federal Claims

Plaintiffs remaining federal claims—Count VIII for violation of Mr. Fuzy's Fourth Amendment rights and Count IX for violation of Mr. Fuzy's procedural due process rights—also require dismissal. [5]

### 1.  Count VIII: Violation of Fourth Amendment Rights

Count VIII alleges that Mr. Fuzy was repeatedly required to undergo psychological fitness for duty examinations without justification and "attend sessions with non-mental health practitioners who . . . attempted to conduct therapy sessions with him" in violation of his Fourth Amendment rights to be free from unlawful searches and seizures and to privacy.  Compl. ¶¶ 255–63.  Defendants argue Plaintiffs have not stated a Fourth Amendment violation because, *inter alia*,

---

[4] Plaintiffs concede dismissal of Count X as against the WEA and NJEA Defendants.  ECF Nos. 89 at 8 & 90 at 10 n.1.

[5] Although the Complaint does not specify under what statute Plaintiffs bring these claims, the Court construes them as § 1983 claims.

Mr. Fuzy voluntarily attended counseling. *See* ECF No. 79.13 at 28; ECF No. 81.1 at 7; ECF No. 101 at 30.

As an initial matter, the Court observes that New Jersey law expressly permits boards of education to require employees to submit to psychiatric evaluations under certain circumstances. Under N.J.S.A. 18A:16-2(a), a board of education "may require individual psychiatric or physical examinations of any employee, whenever, in the judgment of the board, an employee shows evidence of deviation from normal, physical or mental health." New Jersey courts have rejected constitutional privacy challenges to N.J.S.A. 18A:16-2, finding that "[p]rotection of school children from teachers who have shown evidence of harmful, significant deviation from normal mental health is without question not only a valid legislative concern but one classifiable as a compelling state interest" and that the statute "is constitutional." *Kochman v. Keansburg Bd. of Ed.*, 124 N.J. Super. 203, 212–13 (Ch. Div. 1973). Importantly, a school board "need not wait until the harm occurs" to determine a teacher's fitness for duty; rather, "a reasonable possibility of its occurrence warrants such action." *Gish v. Bd. of Ed. of Borough of Paramus, Bergen Cnty.*, 145 N.J. Super. 96, 105 (App. Div. 1976).

According to the Complaint, on October 21, 2014, Mr. Fuzy was accused of "throwing seven to ten packs of post it notes" at a student. Compl. ¶ 57. He denied the allegation but was nevertheless removed from the classroom. *Id.* ¶ 60. At his union's urging, Mr. Fuzy accepted a Corrective Action Plan and "voluntarily submitted to anger management therapy" with a private counseling service. *Id.* ¶¶ 60, 63–65, 68. By letter dated November 15, 2014, the counseling service found that Mr. Fuzy had "no anger issues." *Id.* ¶ 65. He alleges that notwithstanding this

therapy, he "was sent to Anger Management with a mental health professional forced on him by the Defendants because he allegedly 'got red with anger.'"[6]  *Id.* ¶ 67.

Even construing the Complaint in the light most favorable to Plaintiffs, it is unclear how Plaintiffs can argue that the Board did not have the authority under N.J.S.A. 18A:16-2(a) to require Mr. Fuzy to undergo fitness for duty evaluations and counseling.  By Plaintiffs' own admission, Mr. Fuzy was sent for further counseling for perceived anger-related issues, and there is no allegation that anger issues do not warrant examination.  Because a board of education retains the authority to require a psychiatric evaluation whenever, in its own judgment, "an employee shows evidence of deviation from normal . . . mental health," the Court cannot say, on the allegations before it, that Defendants acted outside of the scope of N.J.S.A. 18A:16-2.  Therefore, Count VIII is dismissed.[7]

### 2.  Count IX: Violation of Procedural Due Process Rights

In Count IX, Plaintiffs allege Defendants violated Mr. Fuzy's Fifth and Fourteenth Amendment rights to procedural due process by suspending him without proper notice or a timely opportunity to be heard.  *See* Compl. ¶¶ 264–70.  Defendants argue, *inter alia*, that Mr. Fuzy was afforded sufficient process.  *See* ECF No. 79.13 at 31–32; ECF No. 81.1 at 8–9; ECF No. 101 at 31–33.

"A state employee protected by a tenure statute has a property interest in her job within the meaning of the Fourteenth Amendment."  *Tobia*, 2020 WL 7334209, at *9.  The Supreme Court

---

[6] While the Complaint alleges that Mr. Fuzy's facial redness was caused by a rare disease called Polycythemia Vera, *see* Compl. ¶ 80, it does not, as currently pled, deny that Mr. Fuzy exhibited anger.

[7] The Board Defendants also contend Count VIII is barred by both the statute of limitations and the doctrine of collateral estoppel.  ECF No. 101 at 30–31.  As Count VIII fails on its merits, the Court need not reach these contentions.

has recognized that "[t]he essential requirements of due process . . . are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  In accordance with these constitutional guarantees, a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546.  In addition, the TEHL sets forth certain notice and pre-termination hearing requirements for tenure arbitrations, including notifying the employee of the charges and holding a hearing before an arbitrator.  *See* N.J.S.A. §§ 18A:6-10 to 18A:6-17.

Here, Plaintiffs have not stated a procedural due process violation.  As currently pled, the Complaint suggests Mr. Fuzy did in fact receive notice of the charges against him and was able to take discovery, *see* Compl. ¶¶ 120, 164, and the Award indicates he had an opportunity to present his position at a hearing, examine witnesses, and receive a written explanation of the Arbitrator's findings, *see generally* Award.  *Loudermill*, 470 U.S. at 546.  Notwithstanding this notice and hearing, Plaintiffs contend Defendants denied Mr. Fuzy due process by failing to comply with the procedural requirements of a school board policy and "manipulat[ing]" statutory time limits "to prevent the timely resolution of this [matter]."  *See, e.g.*, ECF No. 83 at 30–31.  Plaintiffs' contentions are unavailing for two reasons.  First, even if Defendants did not adhere to the procedural requirements of a school board policy, it does not necessarily follow that Mr. Fuzy received inadequate process as a constitutional matter.  As noted above, a tenured employee is entitled to notice, an explanation of the employer's evidence, and an opportunity to heard.  *Loudermill*, 470 U.S. at 546, and the record before the Court suggests Mr. Fuzy received just that.  Second, Plaintiffs' allegation that Defendants "manipulated" statutory time limits is too conclusory to state a due process claim.  Indeed, the Complaint pleads no factual content showing how

Defendants allegedly manipulated statutory time limits.  Because Plaintiffs have failed to allege that Mr. Fuzy did not receive all the process to which he was due, Count IX must be dismissed.

### C.  State Law Claims

The remaining claims in the Complaint appear to assert violations of state law.  Where a "district court has dismissed all claims over which it has original jurisdiction," it may decline to exercise supplemental jurisdiction over state law claims.  28 U.S.C. § 1367(c).  Here, the Court dismisses all of the claims over which it has original federal question jurisdiction without prejudice, and declines to exercise supplemental jurisdiction.  *Bonanni v. Purdy et al.*, No. 13-6212, 2013 WL 6579129, at *2 (D.N.J. Dec. 13, 2013) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . .  the district court has dismissed all claims over which it has original jurisdiction") (citations and quotations omitted).

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Defendants' motions are granted and the Complaint is dismissed without prejudice.  To the extent Plaintiffs can cure the deficiencies identified herein, they may file an amended pleading within thirty (30) days of the date of this decision.  An appropriate Order follows.

**DATE:** April 29, 2022

s/ Claire C. Cecchi

**CLAIRE C. CECCHI, U.S.D.J.**